**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

VETERANS FOR A                         *
STRONG AMERICA                         *
P.O. Box 1246                          *
Sioux Falls, SD 57101-1246             *
                                       *
    and              *
                                       *
JOEL ARENDS                            *
P.O. Box 1246                          *
Sioux Falls, SD 57101-1246             *
                                       *
    Plaintiffs       *
                                       *
    v.               *        Civil Action No. 15-00464
                                       *
DEPARTMENT OF STATE                    *
2201 C Street, NW                      *
Washington, D.C. 20520                 *
                                       *
    Defendant.       *
                                       *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## COMPLAINT

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, <u>et seq.</u>, <u>as amended</u>, for the disclosure of agency records constituting e-mails and telephonic records regarding the attacks against U.S. Government facilities and personnel in Benghazi, Libya, on September 11, 2012. The records were improperly withheld from plaintiffs Veterans for a Strong America and Joel Arends by the defendant Department of State.

## JURISDICTION

1.  This Court has both subject matter jurisdiction over this action and personal jurisdiction over the defendants pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C.

§ 1331.

## VENUE

2.   Venue is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

## PARTIES

3.   Plaintiff Veterans for a Strong America ("VSA") is a non-partisan, 501(c)(4) non-profit organization. VSA is dedicated to educating the public, members of Congress and the Executive Branch about a strong national defense, robust foreign policy and building a military that is second to none. VSA is the nation's largest veteran's group for Afghanistan and Iraqi War veterans, otherwise referred to as War on Terror veterans.

4.   Plaintiff Joel Arends ("Mr. Arends") is the Chairman of VSA and a licensed attorney. Mr. Arends is a combat experienced veteran, is currently serving as a Major in the United States Army Reserve, and is a Bronze Star recipient for his service in Iraq.

5.   Defendant Department of State ("State") is an agency within the meaning of 5 U.S.C. § 552 (e), and is in possession and/or control of the records requested by VSA and Mr. Arends that are the subject of this action.

## FACTUAL BACKGROUND

6.   It has been more than two years since the horrific attacks on the U.S. Consulate in Benghazi, Libya, resulted in the deaths of four Americans, including Ambassador Chris Stevens. Since that fatal attack, Congress, the Executive Branch and the media have conducted several inquiries into what occurred in September 2012, and the investigations have continued to this day by way of a Select Committee in the U.S. House of Representatives. The public record on the subject of the Benghazi attacks is admittedly extensive, and the classified record is presumably even more so.

2

7.   Despite those investigations, however, the public record remains distressingly deficient with respect to the particular actions taken by then-Secretary of State Hillary Rodham Clinton ("Secretary Clinton"), who is now widely expected to seek the Presidency in 2016. It is the intended purpose and objective of this litigation to shed some much needed light on Secretary Clinton's specific actions in the narrow context of the Benghazi attacks. That information will serve to benefit the American public by way of helping provide a clearer and more comprehensive record when deciding whether to vote for Secretary Clinton to serve as our Nation's next Commander in Chief.

8.   The accessibility of this information has come into question in light of recent revelations regarding the manner in which Secretary Clinton, as well as an unknown number of her closest senior aides, utilized private e-mail accounts while working at State. On March 2, 2015, the *New York Times* published an article revealing that Secretary Clinton had exclusively used a personal e-mail account to conduct U.S. Government business throughout her tenure as Secretary of State. The article revealed that, two months earlier, advisors to Secretary Clinton had turned over to State 55,000 pages of e-mails encompassing Secretary Clinton's tenure at State. *http://www.nytimes.com/2015/03/03/us/politics/hillary-clintons-use-of-private-email-at-state-department-raises-flags.html?hp&action=click&pgtype=Homepage&module=first-column-region&region=top-news&WT.nav=top-news&_r=0* (last accessed March 12, 2015). On March 3, 2015, Gawker.com published an article identifying Secretary Clinton's private e-mail address as HDR22@ClintonEmail.com. *http://gawker.com/this-is-hillary-clinton-s-secret-email-hdr22-clintonem-1689178736* (last accessed March 12, 2015).

9.   On March 10, 2015, Secretary Clinton gave public remarks and answered questions regarding her use of a personal e-mail address while serving as Secretary of State. Following those public remarks, aides to Secretary Clinton released a 9-page statement addressing several legal and policy questions surrounding Secretary Clinton's use of a personal e-mail address in the course of her official duties as Secretary of State. In the 9-page statement, it was confirmed that the HDR22@ClintonEmail.com account contained 62,320 sent and received e-mails that encompassed the entirety of her tenure as Secretary of State. It was also confirmed that Secretary Clinton's personal lawyers had reviewed the 62,320 e-mails and identified 30,490 e-mails that should be turned over to State as potentially qualifying as Federal records. The remaining e-mails were identified as private, personal e-mails that were not federal records and were intentionally destroyed. *http://www.politico.com/magazine/story /2015/03/hillary-clinton-press-conference-115958.html#.VQGZhOayaUl* (last accessed March 12, 2015); *http:// talkingpointsmemo.com/livewire/hillary-clinton-email-explainer-document* (last accessed March 12, 2015).

10. Based on the facts known thus far the developing story appears to be that the use of personal e-mails by Secretary Clinton and members of her senior staff may have been a deliberate attempt to shield communications from capture by governmental systems and the public's eye, for reasons yet unknown. The interests of justice and transparency require a full accounting of Secretary Clinton's communications in whatever form or medium they were transmitted, particularly in the context of her actions on September 11, 2012, and September 12, 2012.

**COUNT ONE**

11. By facsimile dated July 2, 2014, VSA and Mr. Arends (hereinafter referred to jointly as "the Requesters") submitted a FOIA request ("Original FOIA Request") for "all records created, received and/or maintained by [State], including all cross-references, constituting e-mails and telephonic records regarding the attacks against U.S. Government facilities and personnel in Benghazi, Libya on September 11, 2012." The Requesters noted that the timeframe of relevant records could be limited to those that were created by State or which came into State's possession between 12:00PM EST on September 11, 2012, and 11:59PM EST on September 12, 2012. The Requesters further clarified that the scope of the of the search should not be limited to State-originated records and should be construed to include records that are currently in the possession of a U.S. Government contractor for purposes of records management.

12. In addition, the Requesters voluntarily restricted the scope of the Original FOIA Request to three categories:

1) E-mails either sent or received by Hillary Rodham Clinton, in her capacity as Secretary of State ("Secretary Clinton"), including any e-mails received as a "carbon copy" or "blind carbon copy" (better known as "CC" or "BCC" designations). Relevant e-mail addresses should include Secretary Clinton's official State e-mail address and any "alias" State e-mail addresses, as well as any personal e-mail addresses that were used in her official capacity and for the purpose of conducting official U.S. Government business;

2) Telephonic records reflecting calls made or received by Secretary Clinton. This would include calls using official phones, such as a U.S. Government-issued Blackberry or secured landline phone, as well as any personal phones (landline or mobile) that were used in her official capacity and for the purpose of conducting official U.S. Government business; and

3) Transcripts or similar documentation memorializing the substantive contents of the telephonic conversations referenced in (2).

13. In the Original FOIA Request, the Requesters explained that they were requesting a waiver of fees or, alternatively and at a minimum, a reduction in fees. The Requesters explained that VSA is a non-partisan, 501(c)(4) non-profit organization and qualifies as a representative of the news media. VSA has the ability to disseminate information on a wide scale and intended to use information obtained through the Original FOIA request in an original work, namely a book tentatively titled "Betrayal in Benghazi" that is under contract for publication. VSA's activities, as well as public remarks made by its chairman, Mr. Arends, have received prominent mention in many media outlets and publications, satisfying the requirement to demonstrate both a past and future intent to publish information.

14. The Requesters further noted that disclosure of responsive records would contribute to the public's understanding of government operations or activities and was in the public interest. The Requesters explained that the attacks in Benghazi have been the subject of extensive and wide-ranging inquiries, including an internal State investigation, eight separate investigations by Congressional committees, and the current House Select Committee chaired by Congressman Trey Gowdy. The Requesters indicated that no records had been produced reflecting the details of Secretary Clinton's interactions with other State officials (and/or other parts of the U.S. Government) during the Benghazi attacks.

15.  The Requesters received written confirmation via eFax that the Original FOIA Request had been successfully submitted to the fax number listed for State on FOIA.Gov.

16. On March 4, 2015, the undersigned contacted State to inquire regarding the status of the Original FOIA Request. The undersigned indicated that no response had yet been received from State, including a mere acknowledgment form listing a Request Number. During the phone call, an official in State's FOIA office indicated that there was no record of the Original FOIA Request ever being received by State. The official advised re-submitting the request and including a copy of the fax confirmation sheet. The official indicated that, if that step was taken, State would place the FOIA request into the processing queue at the point it *would* have been if State had properly received the Original FOIA Request on July 2, 2014.

17. By facsimile dated that same day, the Requesters submitted an updated FOIA request ("Updated FOIA Request"), which included both the Original FOIA Request and a copy of the fax confirmation sheet. In the Updated FOIA Request, the Requesters slightly modified the first category of information to clarify that the scope of relevant e-mail addresses should also include any personal e-mail addresses used by Secretary Clinton. Specifically, the Updated FOIA Request identified the e-mail address hdr22@ClintonEmail.com.

18. The Requesters received written confirmation via eFax that the Updated FOIA Request had been successfully submitted to the fax number listed for State on FOIA.Gov.

19. By facsimile dated March 5, 2015, the Requesters attempted to submit a supplement ("Supplement") to the Updated FOIA Request that had been submitted on March 4, 2015. In the Supplement, the Requesters clarified that they were seeking expedited processing of the Updated FOIA Request and stated that they could demonstrate that a "compelling need" existed.

7

20. Specifically, the Requesters reaffirmed the fact that there was broad and sustained public interest in investigating the full details of the Benghazi attacks and that the Requesters had made their request for the primary purpose of disseminating information, as already outlined in both the Original FOIA Request and the Updated FOIA Request. The Requesters further reaffirmed that it was reasonable to conclude that disclosure of the particular information sought in the Updated FOIA Request would contribute to the public's understanding of Government operations and activities. The Requesters clarified that State had not interviewed Secretary Clinton as part of its internal investigation. Furthermore, the Requesters noted that recent media reports had revealed that Secretary Clinton had used a private e-mail server, as opposed to an official State e-mail account, for her work-related e-mails. Those private e-mails are the subject of a subpoena issued by the House Select Committee, as well as the subject of litigation initiated by the Associated Press.

21. The Supplement further noted that State was required by law to issue a determination with respect to expedited processing within 10 days after the date of the request. State's response deadline was identified as on or before March 16, 2015.

22. Due to the shutdown of the Federal Government on March 5, 2015, because of inclement weather, attempts to submit the Supplement via facsimile that day were unsuccessful. On both occasions, the fax machine at State's FOIA office did not "answer".

23. On March 6, 2015, the Requesters again attempted to submit the Supplement to State's FOIA office via facsimile. Again, the fax machine at State did not "answer." The undersigned ultimately was able to submit the Supplement to State by way of an e-mail to

the FOIA Public Liaison, Marianne Manheim ("Ms. Manheim"). Ms. Manheim graciously agreed to forward the Supplement to State's FOIA office, as well as secure confirmation that the Updated FOIA Request had been properly received. State's response deadline to issue a determination with respect to expedited processing was modified to on or before March 17, 2015.

24. On March 11, 2015, the undersigned requested confirmation from Ms. Manheim that the Supplement had been properly forwarded to State's FOIA office. By e-mail dated that same day, Ms. Manheim confirmed that the Supplement had been received.

25. On March 13, 2015, the State FOIA office contacted the undersigned regarding the Updated FOIA Request. State indicated that the Updated FOIA Request had been assigned Request Number F-2014-11642. However, State noted that it had no record of the Supplement seeking expedited processing.

26. By e-mail dated that same day, the undersigned notified Ms. Manheim that the State FOIA office had no record of receiving the Supplement.

27. By e-mail dated March 17, 2015, Ms. Manheim stated that she was following up with the State FOIA office to ascertain the details. By e-mail dated that same day, Ms. Manheim confirmed that the Supplement had been received and that the request for expedited processing was under consideration.

28. To date, no response has been received by the Requesters with respect to their request for expedited processing.

29. As more than ten days have elapsed since the submission of the Supplement without any determination by State regarding expedited processing, the Requesters have therefore constructively exhausted all required administrative remedies.

30. The Requesters have a legal right under the FOIA to obtain the information they seeks, and there is no legal basis for the denial by State of said right.

WHEREFORE, plaintiffs Veterans for a Strong America and Joel Arends pray that this Court:

(1) Orders the defendant to disclose the requested records in their entirety and make copies promptly available to them;

(2) Award reasonable costs and attorney's fees as provided in 5 U.S.C. § 552 (a)(4)(E) and/or 28 U.S.C. § 2412 (d);

(3) expedite this action in every way pursuant to 28 U.S.C. § 1657 (a); and

(4) grant such other relief as the Court may deem just and proper.

Date:   April 1, 2015

Respectfully submitted,

/s/

_____
Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Brad@MarkZaid.com
Mark@MarkZaid.com

Attorneys for Plaintiffs