## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| VETERANS FOR A STRONG AMERICA, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 15-464 (RMC) |
| DEPARTMENT OF STATE, | ) ) ) | |
| Defendant. | ) ) | |

## OPINION

Veterans for a Strong America and Joel Arends seek telephone records reflecting calls made or received by former Secretary of State Hillary Rodham Clinton, or transcripts of the same, during the twenty-four hour period in which the attacks against United States facilities and personnel in Benghazi, Libya occurred. The search for records by the U.S. Department of State did not satisfy Plaintiffs and both sue under FOIA. Plaintiffs suggest that the Court "should authorize limited discovery to confirm the existence of responsive telephonic records currently in the custody of former [Secretary Clinton] or others." Opp'n [Dkt. 19] at 1. The Court declines the suggestion and finds that State conducted adequate searches and asserted appropriate FOIA exemptions as to the records it withheld in whole or in part. For the following reasons, summary judgment will be granted to State.

## I.      BACKGROUND

Veterans for a Strong America is a non-partisan, 501(c)(4) non-profit organization. It is dedicated to educating the public, members of Congress, and the Executive Branch about a strong national defense, robust foreign policy, and building a military that is

second to none.  Compl. [Dkt. 1] ¶ 3.  Joel Arends is the Chairman of Veterans for a Strong

America and is a combat-experienced veteran.  *Id*. ¶ 4.  These Plaintiffs submitted a request

under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to the Department of State (State

or Department) on July 2, 2014.  *Id*. ¶ 11.  This request asked for "all records created, received

and/or maintained by [State], including all cross-references, constituting e-mails and telephonic

records regarding the attacks against U.S. Government facilities and personnel in Benghazi,

Libya on September 11, 2012," limited to those that were created by State or which came into

State's possession between 12:00 PM EST on September 11, 2012, and 11:59 PM EST on

September 12, 2012.  *Id*.  The scope of the request was explained as:

1.   E-mails either sent or received by Hillary Rodham Clinton . . . ;[1]

2.   Telephonic records reflecting calls made or received by Secretary
Clinton.  This would include calls using official phones, such as a
U.S. Government-issued Blackberry or secured landline phone, as
well as any personal phones (landline or mobile) that were used in
her official capacity and for the purpose of conducting official U.S.
Government business; and

3.   Transcripts or similar documentation memorializing the substantive
contents of the telephonic conversations referenced in (2).

*Id*. ¶ 12.  On March 4, 2015, Plaintiffs contacted State to inquire regarding the status of the FOIA

request.  *Id*. ¶ 16.  During the phone call, an official in State's FOIA office indicated that there

was no record of the FOIA request and asked that it be resubmitted.  *Id*. ¶ 16.  Plaintiffs did so

the same day.  *Id*. ¶ 17.

---

[1] No complaint about emails is raised here.  Plaintiffs only take issue with an alleged lack of
explanation by the government "as to how *any* of [the locations searched] were reasonably likely
to contain telephonic records reflecting calls made or received by Secretary Clinton using non-
[U.S. government] phones."  Opp'n at 5-6 (emphasis in original).

On March 6, 2014, Plaintiffs submitted a Supplement to their FOIA request asking for expedited processing. *Id.* ¶ 23. On March 13, 2015, State's FOIA Office contacted Plaintiffs' counsel indicating that the FOIA request had been assigned Request Number F-1014-116742. *Id.* ¶ 25. As of April 1, 2015, when Plaintiffs filed their Complaint, they had received no response with respect to their request for expedited process. *Id.* ¶ 28.

On June 30, 2015, the parties agreed to a production schedule of the requested records. On June 29, 2015, State informed Plaintiffs that it had initiated a search of certain records systems and produced the first set of responsive documents. *See* Declaration of John F. Hackett [Dkt. 17-4] (Hackett Decl.) ¶¶ 8-9. State produced the remaining documents in October 2015 and February 2016. *Id.* ¶ 10-12. State filed for summary judgment on February 23, 2016. *See* Mot. for Summ. J. [Dkt. 17] (MSJ). Plaintiffs' filed their opposition on April 4, 2016, *see* Opp'n to MSJ [Dkt. 19] (Opp'n), and State replied on April 25, 2016, *see* Reply in Supp. of MSJ [Dkt. 20] (Reply).

In support of its motion for summary judgment, the Department has submitted the Declaration of John F. Hackett, the Director of the Office of Information Programs and Services (IPS) at State. *See* Hackett Decl. ¶ 1. Mr. Hackett's Declaration is 71 pages long, includes nine exhibits, and provides great detail about how State conducted its searches and made its decisions on applicable FOIA exemptions. He states that IPS advised Plaintiffs by letter dated April 21, 2015, that it had determined that their requests warranted expedited processing. Hackett Decl. ¶ 7.

### A.  The State Department's Search Process

After reviewing Plaintiffs' request, IPS identified three record systems or offices likely to contain responsive records:  the Central Foreign Policy Records, the Bureau of Near Eastern Affairs, and the Executive Secretariat.  *Id*. ¶ 15.

The Central File is the Department's centralized record system and contains over 30 million records of a substantive nature, "including official record copies of almost all incoming and outgoing telegrams between the Department and Foreign Service posts."  Hackett Decl. ¶ 17.  "Because the Central File is the Department's most comprehensive and authoritative compilation of records, it is by far the records system most frequently searched in response to FOIA requests."  *Id.*  "An IPS analyst . . . conducted a full-text search of the Central File using the following search terms:  ('Clinton' or 'secretary') and ('Benghazi' or 'Libya')."  *Id. ¶* 19.  The search did not locate any records responsive to Plaintiffs' request.  *Id.*

An IPS analyst also searched retired electronic and paper files of the Office of the Secretary during Secretary Clinton's tenure.  *Id.* ¶ 20.  These consisted of "shared electronic office folders that were available to employees within the Office of the Secretary during former Secretary Clinton's tenure, as well as individual electronic folders of files belonging to Jake Sullivan and Cheryl Mills."  *Id.* ¶ 20.  A full-text search of the retired electronic records using the search terms ("Clinton" or "Secretary") and ("September 11, 2012" or "September 12, 2012") located six responsive documents.  *Id.*  After manually reviewing the manifests of retired files in the Retired Record Inventory Management System, "a database that tracks the status of all retired records received at the Records Service Center," an IPS analyst identified two boxes of retired paper files that potentially contained responsive material.  *Id.* ¶ 20, n.2.  "An IPS analyst conducted a manual search of the contents of these boxes and located three responsive

documents." *Id.* ¶ 20. "For one of these boxes, the folder identified on the manifest as 'Secretary of State Phone Logs 2012-2013' was missing from the box. The Records Service Center was notified regarding the missing file folder; however, efforts to locate it have been unsuccessful." *Id.* ¶ 20, n.3.

The Bureau of Near Eastern Affairs (Bureau) advises the Secretary on matters in North Africa and the Middle East. *Id.* ¶ 21. The Bureau's electronic records are organized by topic and subject. *Id.* ¶ 22. After searching the electronic records—"including shared drives, databases, and current and archived e-mail records"—and the paper files in the Bureau, three responsive documents were located. *Id.*

The Office of the Executive Secretariat coordinates the work of the Department internally, serving as the liaison between State's bureaus and the offices of the Secretary, Deputy Secretary, and Under Secretaries. *Id.* ¶ 23. A Management Analyst on the Secretariat staff conducted searches of the electronic records systems that were reasonably likely to contain responsive records. *Id.* ¶ 24. "These systems are the Secretariat Tracking and Retrieval System, the Secretariat Telegram Processing System, and top secret files." *Id.* Documents in the Secretariat Tracking and Retrieval System are indexed, scanned, and stored as images; a descriptive abstract is attached to each document and only the text of the abstracts can be searched. *Id.* ¶ 24, n.4. Similarly, during the top secret search, search terms were applied to an index of files rather than the full text of the top secret files. *Id.* ¶ 26. The search terms used were: "Secretary Hillary Clinton," or "Benghazi," or "Libya," or "Huma Abedin," or "Cheryl Mills," or "Secy-app," or "Memcon" (not further identified). *Id.* ¶ 24. Any of the terms listed would have retrieved any documents that contained one or more of the search words. *Id.* ¶ 25. These searches located eight responsive records. *Id.* ¶ 24.

A Management Analyst on the Secretariat staff conducted a full-text search in the Clinton email collection using the search terms: "Hillary Clinton," or "Benghazi," or "Secy-app," or "Memcon," or "Attack," or "Mission," or "Consulate," or "Chris Stevens." *Id.* ¶ 27. This search retrieved six responsive records. In addition, 33 responsive records were retrieved during an earlier search of a collection of 296 of Secretary Clinton's emails. *Id.* ¶ 28, n.6. These 296 emails were compiled in response to a Congressional request asking for Benghazi-related emails. *Id.*

The Executive Secretariat is also responsible for searches of the State Department's Operations Center. The Director of the Operations Center conducted a search of the emails in the archive of the email account that is used by duty officers in the Operations Center and located 49 responsive documents. *Id.* ¶ 29. The Director also searched the email account of the Operations Director during September 2012 and located four responsive documents.

**B. Responsive Records Concerning Telephone Calls**

State produced a total of 112 responsive documents. Hackett Decl. ¶ 67. Of these, 25 documents were released in full, 85 were released in part, and 2 were withheld in full. *Id.* Mr. Hackett has conveniently identified every document that was located by number and explained whether it was released in full or in part, as well as any applicable FOIA exemption, specifically Exemptions (b)(1), (5), and (6).

The following documents concerning telephone calls were withheld in full or in part pursuant to FOIA Exemption (b)(1):

- Document C05660793 is a two-page intra-agency email exchange dated September 12, 2012, regarding a telephone conversation between Secretary Clinton and Egyptian Prime Minister Kandil about the recent violence towards U.S. diplomatic posts in Libya and Egypt. *Id.* ¶ 54. Part of this record is designated CONFIDENTIAL under Executive

Order 13526.[2]  State withheld both foreign government information and information regarding foreign relations activities of the United States, pursuant to §§ 1.4(b) and (d) of the Executive Order.  *Id.*

- Document C05660817 "is a two-page 'Call Sheet' for Secretary Clinton regarding a planned call with a foreign official, which contains several points regarding the attacks on U.S. facilities in Benghazi, Libya.  *Id.* ¶ 55.  Portions of the document are designated CONFIDENTIAL and withheld pursuant to § 1.4(d) of the Executive Order because it concerns the foreign relations activities of the United States.  *Id.*

- Document C05872474 is a four-page cable dated September 12, 2012, containing a memorandum of a telephone conversation between Secretary Clinton and Afghan President Karzai, which is currently designated CONFIDENTIAL and withheld in full pursuant to §§ 1.4(b) and 1.4(d) of the Executive Order.  *Id.* ¶ 56.

- Document C05872473 is a four-page cable dated September 12, 2012, containing a memorandum of a telephone conversation between Secretary Clinton and Prime Minister Kandil.  *Id.* ¶ 57.  Portions of this document are currently designated SECRET under the Executive Order.[3]  *Id.*  State withheld portions of this document pursuant to §§ 1.4(b) and (d) of the Executive Order.  *Id.*

- Documents C05933132 (two pages) and C05933133 (four pages) are inter-agency email exchanges dated September 12, 2012 containing a transcript of telephone conversations between Secretary Clinton and Egyptian Prime Minister Kandil and Afghan Prime Minister Karzai about the recent violence towards U.S. diplomatic posts in Libya and Egypt.  *Id.* ¶ 60.  Portions of document C05933132 are designated SECRET and portions of document C05933133 are designated CONFIDENTIAL.  *Id.*  State withheld information in both documents that is foreign government information and information regarding foreign relations activities of the United States pursuant to §§ 1.4(b) and (d) of the Executive Order.  *Id.*

The following documents concerning telephone calls were withheld in part

pursuant to Exemption (b)(5):

- Document C05660817 "is a two-page 'Call Sheet' for Secretary Clinton regarding a planned call with a foreign official, which contains several points regarding the attacks on U.S. facilities in Benghazi, Libya."  *Id.* ¶ 55.  Portions of this document were withheld

---

[2] "Confidential" is applied to "information, the unauthorized disclosure of which reasonably could be expected to cause damage to the national security that the original classification authority is able to identify or describe."  Exec. Order No. 13526, 75 Fed. Reg. 707 § 1.2(1)(3) (December 29, 2009) (Executive Order).

[3] "Secret" is applied to "information, the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security that the original classification authority is able to identify and describe." Executive Order 13526 § 1.2(1)(2).

"because the release of this information would reveal the preliminary thoughts and opinions related to a draft statement regarding a sensitive matter." *Id.* ¶

- Documents C05935289 and C05935290 are one-page documents entitled "Hillary Rodham Clinton Call Log" dated September 11 and 12, 2012, respectively. *Id.* ¶ 61. State withheld information relating to an intra-agency call because it "identifies an individual within the Executive Branch with whom former Secretary Clinton had discussions." *Id.* The information provides "a level of specificity that would tend to reveal particular positions within the Government." *Id.*

The following documents concerning telephone calls were withheld in part

pursuant to Exemption 6:

- Documents C05872462, C05872465, and C05872466, each seven pages long, "are Executive Secretariat Operations Center 'Watch Logs,' records of telephonic communications in and out of the Operations Center and of visitors to the Operations Center, on September 11, 2012 and September 12, 2012." *Id.* ¶ 58. State withheld the names of four government employees and passport application information for a U.S. citizen. *Id.*

- Document C05935290 is a one-page document entitled "Hillary Rodham Clinton Call Log" that is dated September 12, 2012. *Id.* ¶ 61. State withheld the names of two private individuals. *Id.*

- Documents C05950194, C05950195, C05950197, C05950198, and C05950206 are each one-page intra-agency email messages dated September 12, 2012 containing information relating to certain calls made by Secretary Clinton. *Id.* ¶ 64. State withheld "the names, home and mobile telephone numbers, ages, familiar relationship, and home city and state of private individuals." *Id.* State withheld only the name of an employee who printed the document and whose name appeared in the "print line" but was not part of the original document. *Id.*

- C05950240 is a one-page intra-agency email message dated September 11, 2012 which contains details of Secretary Clinton's call to President Mohammed el-Magariaf, then-President of the Libyan General National Congress. *Id.* ¶ 65. State also withheld the name of an employee who printed the document and whose name appeared in the "print line" but was not part of the original document. *Id.*

- Documents C05950163, C05950166, C05950168, C05950170, C05950175, C05950177, C05950179, C05950182, C05950184, C05950185, C05950186, C05950187, C05950189, C05950192, C05950193, C05950196, C05950199, C05950200, C05950202 (two pages), C059500205, C05950207, C05950208, C05950210, C05950213, C05950214, C05950215, C05950216, C05950217, C05950219 (two pages), C05950220 (two pages), C05950221, C05950222, C05950223, C05950224 (two pages), C05950226, C05950227, C05950229, C05950230, C05950231, C05950232, C05950234, C05950237, and

C05950238 are each one-page (except as noted above) intra-agency email messages dated September 11 and 12, 2012 containing information relating to calls made by Secretary Clinton. *Id.* ¶ 66.  State withheld only the name of an employee who printed the document and whose name appeared in the "print line" but was not part of the original document. *Id*.

## II.      STANDARD OF REVIEW

### A.  FOIA

FOIA requires federal agencies to release government records to the public upon request, subject to nine listed exceptions. *See* 5 U.S.C. § 552(b); *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).  A defending agency in a FOIA case must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information. *See Sanders v. Obama*, 729 F. Supp. 2d 148, 154 (D.D.C. 2010), *aff'd*, *Sanders v. Dep't of Justice*, Civ. No. 10-5273, 2011 WL 1769099 (D.C. Cir. Apr. 21, 2011).  The adequacy of a search is measured by a standard of reasonableness and depends on the individual circumstances of each case. *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).  The question is not whether other responsive records may exist, but whether the search itself was adequate. *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).

Thus, to rebut a challenge to the adequacy of a search, an agency must show that "the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (citing *Meeropol v. Meese*, 790 F.2d 942, 950-51 (D.C. Cir. 1986)).  Agencies are not required to search every record system, but agencies must conduct a good faith, reasonable search of those systems of records likely to possess the requested records. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), *overruled in part on other grounds*, 79 F.3d

1172 (D.C. Cir. 1996).  An agency may prove the reasonableness of its search by a declaration

by responsible agency officials, so long as the declaration is reasonably detailed and not

controverted by contrary evidence or evidence of bad faith.  *Military Audit Project v. Casey*, 656

F.2d 724, 738 (D.C. Cir. 1981).  Once an agency has provided such affidavits, the burden shifts

to the plaintiff to demonstrate the lack of a good faith search.  *Maynard v. CIA*, 986 F.2d 547,

560 (1st Cir. 1993).  If a review of the record raises substantial doubt as to the reasonableness of

a search, especially in light of "well-defined requests and positive indications of overlooked

materials," then summary judgment may be inappropriate.  *Founding Church of Scientology of*

*Washington, D.C., Inc. v. NSA*, 610 F.2d 824, 837 (D.C. Cir. 1979).

### B.  Motion for Summary Judgment

State contends that there is no genuine dispute as to any material fact and that it is

entitled to summary judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Summary judgment is properly granted against a party

who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In ruling

on a motion for summary judgment, a court must draw all justifiable inferences in the

nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477

U.S. at 255.  A nonmoving party, however, must establish more than "[t]he mere existence of a

scintilla of evidence" in support of its position.  *Id.* at 252.

FOIA cases are typically and appropriately decided on motions for summary

judgment.  *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F.

Supp. 477, 481 n.13 (D.D.C. 1980), *aff'd sub nom. Rushford v. Smith*, 656 F.2d 900 (D.C. Cir.

1981).  In a FOIA case, a court may award summary judgment solely on the basis of information

provided by the department or agency in affidavits or declarations when the affidavits or

declarations describe "the documents and the justifications for nondisclosure with reasonably

specific detail, demonstrate that the information withheld logically falls within the claimed

exemption, and are not controverted by either contrary evidence in the record nor by evidence of

agency bad faith." *Military Audit Project*, 656 F.2d at 738; *see also Vaughn v. Rosen*, 484 F.2d

820, 826-28 (D.C. Cir. 1973) (requiring agencies to prepare an itemized index correlating each

withheld record, or portion thereof, with a specific FOIA exemption and the relevant part of the

agency's nondisclosure justification).  An agency must demonstrate that "each document that

falls within the class requested either has been produced, is unidentifiable, or is wholly [or

partially] exempt" from FOIA's requirements.  *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir.

1978) (internal quotation marks and citation omitted).

### III.   ANALYSIS

#### A.  The Department's Searches Were Adequate

Under FOIA, an agency must undertake a search that is "reasonably calculated to

uncover all relevant documents."  *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir.

1983).  An agency moving for summary judgment in a FOIA case must first demonstrate that it

made a good-faith effort to search for responsive materials in a manner "reasonably expected to

produce the information requested."  *Oglesby*, 920 F.2d at 68.  Where an agency affidavit avers

that a reasonable search was conducted, the agency is entitled to a presumption of good faith.

*Defenders of Wildlife v. Dep't of Interior,* 314 F. Supp. 2d 1, 8 (D.D.C. 2004).  An affidavit can

be rebutted only when inadequate on its face or with evidence that the agency's search was not

made in good faith.  *Id*.  A plaintiff cannot rebut the good faith presumption that attaches to an

agency's affidavit "through purely speculative claims about the existence and discoverability of other documents." *Brown v. Dep't of Justice*, 724 F. Supp. 2d 126, 129 (D.D.C. 2010). Hypothetical assertions are insufficient to raise a material question of fact with respect to the adequacy of an agency's search. *Oglesby*, 920 F.2d at 67.

Plaintiffs complain only about the adequacy of the searches to locate telephonic records from any non-U.S. Government phones used by Secretary Clinton. Plaintiffs acknowledge that "the descriptions provided in the Hackett Declaration regarding the searches State *did conduct* are well-explained and provide a measurable level of detail not commonly found in agency affidavits in FOIA cases." Opp'n at 5 (emphasis in original) (citations omitted). They remain unsatisfied because they "*specifically* sought telephonic records reflecting calls made or received by Secretary Clinton using non-[U.S. Government] phones (whether landline or mobile)." Opp'n at 5-6 (emphasis in original). They note that "there is no requirement that an agency search every record system . . . [but] the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Jefferson v. Dep't of Justice*, 168 F. App'x 448, 450 (D.C. Cir. 2005) (internal quotation and alteration omitted in brief) (*quoting Oglesby*, 920 F.2d at 68). Opp'n at 6. An agency may not "ignore what it cannot help but know" when faced with "a lead so apparent that the [agency] cannot in good faith fail to pursue it." *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 289 (D.C. Cir. 1996). Plaintiffs argue that the Hackett Declaration is insufficient to support State's motion for summary judgment because it fails to explain "how *any* of those locations [that were searched] were reasonably likely to contain telephonic records reflecting calls made or received by Secretary Clinton using non-[U.S. Government] phones, to say nothing of [memorializing] transcripts." Opp'n at 6 (emphasis in original).

In support of the argument that it is reasonably likely there are responsive records, Plaintiffs provide two "unexplained" matters.  First, Secretary Clinton issued a public statement at 10:00 PM EST on the evening of September 11, 2012, but Plaintiffs have received no documentation reflecting conversations or discussions between the Secretary and her aides regarding the formulation and publication of this statement.  Plaintiffs admit that a conference call that occurred at 7:05 PM EST[4] between the Secretary and several State officials might "theoretically" have addressed this public statement except that Deputy Assistant Secretary of State Phillippe Reines, the Secretary's personal spokesperson, was not on the phone call.  *Id.* at 8.  They contend that "[i]t would arguably defy logic to believe" that the statement was finalized and published "without *any* communication between Secretary Clinton and [Deputy] Assistant Secretary Reines."  *Id.* at 9.

Plaintiffs' "second unexplained matter" is that how, when, and by whom the Secretary was notified of the attack in Libya remains unknown.  *Id.*  Plaintiffs are "not aware of any indication in the public record identifying *who* informed Secretary Clinton, *at what time*, and *by what* method of communication."  *Id.* (emphasis in original).  From these "two unresolved discrepancies," Plaintiffs argue that summary judgment is not yet appropriate.

The Hackett Declaration is entitled to a presumption of good faith.  *See Defenders of Wildlife*, 314 F. Supp. 2d at 8.  It is also, as Plaintiffs acknowledge, unusually thorough in its descriptions of the systems of records that were searched.  The Court finds that the search was adequate for the requested records for the Secretary's calls.  To the extent that Plaintiffs claim State did not seek information concerning calls made on private phones, they are in error.

---

[4]   *See* Document C05872462 (Operations Center Watch Log for September 11, 2012), Hackett Decl. ¶ 58.

Plaintiffs acknowledge that their FOIA request was "specifically structured . . . to accommodate

for the possibility that Secretary Clinton might have conducted . . . official [U.S. Government]

business on non-[U.S. Government] phones and e-mail accounts."  Opp'n at 5.  Consistent with

its obligations under the Federal Records Act, 44 U.S.C. § 2101 *et seq*., but *not* FOIA, State did

the same thing regarding telephonic records that it did regarding emails that may have been

retained by Secretary Clinton: it asked for them by letter.  *See Competitive Enterprise Inst. v.*

*EPA*, 67 F. Supp. 3d 23, 26 (D.D.C. 2014) ("Congress has enacted . . . the Federal Records Act[]

to ensure the accurate and complete documentation of federal records"); *see also* Hackett Decl. ¶

9, n.1; *id*. Ex. 9 (Letter to Former Sec'y Rep.) (requesting that, should Secretary Clinton "be

aware or become aware in the future of a federal record" that it be provided to State "if there is

reason to believe that it may not otherwise be preserved in the Department's recordkeeping

system").  State obtained the Secretary's emails through this request.  Plaintiffs offer no basis to

require additional efforts to obtain telephonic records, about which they speculate, since State

has no FOIA obligation to make that attempt.  *Kissinger v. Reporters Comm. for Freedom of the*

*Press*, 445 U.S. 136, 152 ("[O]nly the Federal Records Act, and not the FOIA, requires an

agency to actually create records, even though the agency's failure to do so deprives the public

of information which might have otherwise been available to it").  The letter, however, belies

Plaintiffs' argument that State did nothing to try to retrieve documents to the extent that they

would constitute federal records.

   What Plaintiffs want to happen now is beyond the purview of FOIA.  To the

extent that the records they seek are outside State's possession and control, State is not required

to search for them.  *See, e.g.*, *Kissinger v. Reporters Comm.*, 445 U.S. at 151-52 (1980) ("FOIA

is only directed at requiring agencies to disclose those 'agency records' for which they have

chosen to retain possession or control."); *Judicial Watch, Inc. v. Fed. Hous. Fin. Agency*, 646

F.3d 924, 926 (D.C. Cir. 2011) (citing *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144-45

(1989)) ("The Supreme Court has held that FOIA reaches only records the agency controls at the

time of the request."); *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 328 (D.C. Cir. 1999)

(agency "has no responsibility under FOIA to make inquiries of other law enforcement agencies .

. . for documents no longer within its control or possession"); *Judicial Watch, Inc. v. U.S. Dep't*

*of Commerce*, 34 F. Supp. 2d 28, 44 (D.D.C. 1998) ("the time at which the FOIA request is

submitted is the time when documents must be in the possession of the agency for the FOIA's

disclosure requirement to apply").  The Supreme Court teaches:

> The conclusion that possession or control is a prerequisite to FOIA
> disclosure duties is reinforced by an examination of the purposes of the
> Act.  The Act does not obligate agencies to create or retain documents; it
> only obligates them to provide access to those which it in fact has created
> and retained.
>
> . . .
>
> If the agency is not required to create or to retain records under the FOIA,
> it is somewhat difficult to determine why the agency is nevertheless
> required to retrieve documents which have escaped its possession, but
> which it has not endeavored to recover.  If the document is of so little
> interest to the agency that it does not believe the retrieval effort to be
> justified, the effect of this judgment on an FOIA request seems little
> different from the effect of an agency determination that a record should
> never be created, or should be discarded.

*Kissinger*, 445 U.S. at 152.

Plaintiffs' two "unexplained" matters only speculate that Secretary Clinton may

have talked on a non-government phone about Benghazi during the 24-hour period of their

request.  They point to no evidence that she did so and available information in the public record

clearly discredits Plaintiffs' assertions.  On October 22, 2015, Secretary Clinton testified before

the House Select Committee on Benghazi that she "learned about the attacks from a State

Department official rushing into [her] office shortly after or around 4'oclock." *Clinton testifies before House committee on Benghazi*, Washington Post (October 22, 2015), https://www.washingtonpost.com/news/post-politics/wp/2015/10/22/transcript-clinton-testifies-before-house-committee-on-benghazi/. Full transcripts of Secretary Clinton's interview are widely available online through a simple Google search. *See* Google Search: Clinton Benghazi Testimony Transcript, www.google.com/search?q=clinton+benghazi+testimony+transcript (last visited Sept. 29. 2016). Plaintiffs' failure to find transcripts of Secretary Clinton's testimony discredits any suggestion that Plaintiffs have searched everywhere "within the publicly-available record." Opp'n at 8.

Another major flaw in Plaintiffs' argument is the assumption "that email and telephone are the only means of available communication, and that the content of all phone calls is documented." Reply at 7. As demonstrated by Secretary Clinton's testimony, communications occur in a variety of ways, not all of which can be found in government documents. Plaintiffs' assertions are mere conclusions without support. Indeed, the public record clearly explains one of their "unexplained" matters. Plaintiffs do not overcome the presumption of good faith afforded the Hackett Declaration. *See Oglesby*, 920 F.2d at 67; *Brown*, 742 F. Supp. 2d at 129. The Court finds that State made a good faith effort to search for responsive documents and that the search was adequate in response to Plaintiffs' FOIA request.

### B. State Properly Withheld Responsive Records Under Exemption One

Under FOIA, federal agencies must release agency records upon request, unless one of nine exemptions applies. 5 U.S.C. § 552. "[D]isclosure, not secrecy, is the dominant objective of the Act." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976). Even though FOIA "strongly favors prompt disclosure, its nine enumerated exemptions are designed to

16

protect those legitimate governmental and private interests that might be harmed by release of certain types of information." *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (internal quotation marks omitted).  The exemptions should be narrowly construed.  *Tax Analysts*, 492 U.S. at 151.

To prevail on summary judgment in a FOIA action, an agency must demonstrate that the information withheld from disclosure is exempt and that the agency segregated non-exempt materials.  *See* 5 U.S.C. § 522(a)(4)(B), (b).  An agency may satisfy this burden by providing "a relatively detailed justification through the submission of an index of documents, known as a *Vaughn* Index, sufficiently detailed affidavits or declarations, or both."  *Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative*, 237 F. Supp. 2d 17, 22 (D.D.C. 2002) (internal quotations and citations omitted); s*ee also Vaughn*, 484 F.2d 820.  State has satisfied this burden.

State relies on FOIA Exemptions (b)(1), (5) and (6) in withholding documents in full or in part.  *See* Hackett Decl. ¶¶ 31, 41, 43.  Plaintiffs concede "the withholdings made pursuant to Exemption 5 and Exemption 6 and [do] not contest them."[5]  Opp'n at 15.  They argue that summary judgment is not currently warranted for State's withholdings under Exemption 1.  *Id.*

---

[5] Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. 552(b)(5).  Exemption 5 also protects the deliberative process privilege, which "allows the government to withhold documents and other materials that would reveal 'advisory opinions, recommendation and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"  *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (*citing Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)).  Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).

Exemption 1 protects from disclosure records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. 552(b)(1). The requirements for classifying information relevant to such a request are contained in Executive Order 13526. Information is subject to classification under Executive Order 13526 if it meets the following conditions:

> (1) an original classification authority is classifying the information;
>
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
>
> (3) the information falls within one or more of the categories of information listed in section 1.4 of this order; [6] and
>
> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Executive Order No. 13526, § 1.1(a). The Court has determined that each of these elements has been established.

State has established that: (1) all of the withheld records were classified by Mr. Hackett, an original classification authority; (2) the withheld records were owned, produced or controlled by the United States Government; and (3) the withheld information fell within one or more of the categories of information listed in § 1.4 of Executive Order 13526. *See* Hackett Decl.

---

[6] The three categories relevant here are: (1) information that pertains to foreign government information, Executive Order 13526 § 1.4(b); (2) information that pertains to foreign relations or foreign activities of the United States, including confidential sources, *id*. § 1.4(d); and (3) information that pertains to vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to national security, *id*. § 1.4(g).

¶¶ 1-2, 17-30, 31-47.  Plaintiffs do not refute that the information satisfies these three conditions

of Executive Order 13526 § 1.1(a).  They appear to take issue with the final two conditions, arguing

that "the Hackett Declaration fails to satisfy the burden of specificity," in that it failed to provide

enough information "regarding the harm disclosure may cause to national security."  Opp'n at 15;

*see also Coldiron v. U.S. Dep't of Justice*, 310 F. Supp. 2d 44, 54 (D.D.C. 2004).

Plaintiffs acknowledge the high level of detail found in the Hackett Declaration.

Opp'n at 5.  The Hackett Declaration provides a narrative *Vaughn* index, individually describing

each withheld document, and specifying the relevant category under § 1.4 of the Executive Order.

Mr. Hackett explains:

> Disclosure of the[se] document[s] at this time could cause
> governments to be less willing in the future to furnish information
> important to the conduct of U.S. foreign relations, and in general
> less disposed to cooperate with the United States in the achievement
> of foreign policy objectives of common interest, as well as have the
> potential to inject friction into, or cause serious damage to, a number
> of our bilateral relationships with countries whose cooperation is
> important to U.S. national security, including some in which public
> opinion might not currently favor close cooperation with the United
> States.

Hacket Decl. ¶¶ 54-57, 60.  "Once an agency demonstrates that it has tailored its response to the

documents requested by a FOIA plaintiff, the court should not second-guess an agency's 'facially

reasonable concerns' regarding the harm disclosure may cause to national security."  *Coldiron*,

310 F. Supp. 2d at 54.  State has provided enough detail for this Court to find, as it does, that

Exemption 1 was properly invoked.

### C.  Segregability of Non-Exempt Information

The Court has reviewed the Hackett Declaration with care and finds that it

adequately explains that State conducted a line-by-line review of each document and concluded

that there was no additional information that could be reasonably segregated for release.  *See*

Hackett Decl. ¶¶ 54-57, 60.

      **D.  Request for Discovery**

Federal Rule of Civil Procedure 56(d)(2) provides that "if a nonmovant shows by

affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its

opposition, the court may . . . allow time to obtain affidavits or declarations or take discovery."

Fed. R. Civ. P. 56(d)(2).  Plaintiffs seek "limited discovery to verify whether in fact responsive

records exist memorializing calls made and/or received by Secretary Clinton on non-[U.S.

Government] phones."  Opp'n at 10.  The request will be denied.

"Discovery in FOIA is rare and should be denied where an agency's declarations

are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute

remains."  *Baker & Hostetler, LLP v. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006).

Plaintiffs have offered nothing to overcome the presumption to which the State Department is

entitled and the Court can find no basis to doubt the good faith of the very detailed Hackett

Declaration.  Plaintiffs articulate no factual dispute that is relevant to their FOIA Complaint.

## IV.   CONCLUSION

For the reasons above, the Court will grant the Motion for Summary Judgment,

Dkt. 17, and judgment will be entered in favor of the State Department.  A memorializing Order

accompanies this Memorandum Opinion.

Date: September 30, 2016                    _____/s/_____

                                   ROSEMARY M. COLLYER
                                   United States District Judge